UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **HELEN RYERSON AYERS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-CV-2208 |
| v. ) | |
| ) | |
| **JAMES L. AYERS and CENTRAL** ) | |
| **ILLINOIS MANUFACTURING** ) | |
| **COMPANY, an Illinois corporation,** ) | |
| **d/b/a Cim-Tek Filtration,** ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| **WILLIAM AYERS,** ) | |
| Intervenor-Defendant. ) | |

**OPINION**

This tortured case, beginning in a state court divorce in October 2006, and spanning over 120 docket entries there, has spilled into Federal court, having accumulated over 40 entries here (and yet accomplishing little of note). Plaintiff, who disputes the proper ownership of certain shares of stock purportedly transferred to her during the three-month pendency of her marriage, attempts to circumvent the Illinois dissolution proceedings by filing a state law action in Federal court. In her complaint, she seeks, ostensibly pursuant to an Illinois statute providing compensation to a shareholder when the board of directors engages in illegal, oppressive, or fraudulent activity, those selfsame shares disputed in the divorce proceedings. Because this case involves, among other factors, parallel state proceedings regarding the same contested property, *Colorado River* abstention is appropriate.

This case is before the court on Plaintiff's Objection (#41) to Magistrate Judge Bernthal's Order (#39) permitting Intervenor-Defendant William Ayers to intervene for the limited purpose of staying proceedings, and contemporaneously staying the proceedings pending entry of final judgment in a parallel state case. The court has reviewed the briefs, the complaint, and Judge Bernthal's Order (#39), as well as other relevant filings in the docket. Following this careful review, the Order granting the Motion to Intervene and to Stay (#39) is VACATED, and the case is dismissed without prejudice *sua sponte*.

## Jurisdiction

Plaintiff Helen Ayers ("Helen") is a citizen of Texas, Defendant James Ayers ("Jim") is a citizen of Illinois, and Defendant Central Illinois Manufacturing Company, d/b/a Cim-Tek Filtration ("CIMCO"), is incorporated in Illinois, with a principal place of business in Illinois. Plaintiff alleges, and Defendants do not contest, that the amount in controversy exceeds $75,000. Plaintiff alleges that Jim and CIMCO (collectively, "Defendants") have violated various subsections of 805 ILCS 5/12.56. Accordingly, because there is complete diversity of citizenship and the amount in controversy exceeds the statutory amount, this court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

## Standard of Review

Fed. R. Civ. P. 72(a) states as follows:

> (a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The

>district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Judge Bernthal's Order is therefore reviewed for clear error or any findings or conclusions that are contrary to law.

## Background[1]

Helen and proposed Intervenor-Defendant William Ayers ("Will") were married on July 1, 2006. On October 6, 2006, William filed for dissolution of marriage. That case was docketed in the Circuit Court of the Sixth Judicial District in Piatt County, Illinois, as 06-D-55. CIMCO is a closely-held family corporation that has been operating for over 50 years, manufacturing, among other things, filters for gasoline stations. (#13 ¶ 4). There are 1,000 outstanding shares of CIMCO stock. (#13 ¶ 4). Jim is the current president of CIMCO. (#13 ¶ 5). Jim is Will's brother. (#41 ¶2). Will had a stroke in May 2007, causing him to become, from time to time, mentally disabled. (#1 ¶ 12).

The parties agree that, at one point, Will owned 500 shares. The ownership of 250 of those shares constitutes the controversy in this present case. (#13 ¶ 7; #15 ¶ 3; #32 p. 2). Defendants assert that other family members owned the remaining 500 shares. (#15 ¶ 3). Defendants also assert that at the time of Will's marriage to Helen, Will owned 345 shares, with 155 shares having been at some previous point redistributed to other shareholders. (#15 ¶¶ 5, 6). Helen asserts that during the pendency of the marriage, around August 28, 2006, Will gave 250 of his shares to her. (#1 ¶ 7, #41 exh. 1 ¶ 1). She testified that she is in possession of the physical stock certificates, which are listed on the corporate stock ledger, and their legal transfer occurred

---

[1] **Because of a dearth of evidence taken under oath, background facts in this section are taken from Helen's Complaint (#1), Jim and CIMCO's Answer (#13), and Will's Motion to Intervene (#32) where there is no substantial disagreement.**

in the presence of a notary. (#41 exh. 1 ¶ 1). Defendants deny that Will assigned, gifted, or delivered the 250 shares to Helen, but aver that they have insufficient knowledge as to whether Helen has physical possession of the certificates. (#13 ¶ 7). Will responds that either Helen is "not a CIMCO shareholder" (although he does not explain how this is so) or, in the alternative, that she obtained those shares by exercising undue influence, coercion, and duress (#32 p. 2).

Will asserts that one of the disputed issues in the dissolution case is the allocation of property rights and ownership status of the 250 shares of CIMCO stock at issue in the instant case. (#32 p. 2). In contrast, Helen argues that the issue should be framed instead as a suit solely pursuant to 805 ILCS 5/12.56, which permits a shareholder to demand "[t]he purchase by the corporation or one or more other shareholders of all, but not less than all, of the shares of the petitioning shareholder for their fair value and on the terms determined under subsection," § 5/12.56(b)(11), if "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer," § 5/12.56(a)(3). She argues further that her "statutory right to pursue a 'fair value' purchase of her stock by the corporation has nothing to do with her divorce case or the Illinois Marriage and Dissolution of Marriage Act." (#41 ¶ 4).

As of the date of this opinion, the dissolution of marriage case is still ongoing in the Circuit Court of Piatt County, with the most recent docket entries regarding motions for sanctions and motions to strike, suggesting that a final judgment will not be reached seasonably. Among other entries, this court takes special note of the following events in that docket: 6/3/2008, Petitioner (Will) serves a request to produce on Respondent (Helen); 11/6/2008, Petitioner files a motion to compel response to his request to produce; 4/17/2009, Respondent's

counsel withdraws; 5/27/2009, Respondent's counsel appears on Respondent's behalf at the dissolution hearing (despite his earlier withdrawal); 7/6/2009, Petitioner files motion for sanctions for failure to comply with order, pursuant to Ill. S. Ct. R. 219(c); 9/8/2009, Respondent ordered to appear in person; 9/30/2009, Respondent fails to appear before the court; 1/15/2010, Petitioner files petition for indirect civil contempt; 4/8/2010, Respondent ordered to comply with discovery requests; 8/30/2010, Respondent's counsel files motion to withdraw (again); 8/31/2010, Respondent found to be in default and barred from presenting further evidence in the case; 4/4/2011, Petitioner files motion for protective order; 5/5/2011, Respondent files motion for substitution of judge and motion for mental health examination; 5/26/2011, motion for substitution of judge denied; 5/27/2011, motion for mental health examination denied; 6/17/2011, protective order entered; 6/24/2011, court reconsiders ruling on mental health examination and allows motion; 11/17/2011, mental health exam ordered; 12/14/2011, Petitioner files motion for sanctions for failing to file mental health exam.

On August 31, 2011, Helen filed the present suit in this court, requesting, among other things, that this court compel Defendants to purchase her stock in CIMCO for fair value, pursuant to the Illinois Business Corporation Act, as amended, 805 ILCS §§5/12.56(b)(11) and 12.56(e). (#1). On November 4, 2011, Defendants filed a motion to dismiss. (#6). On February 22, 2012, Magistrate Judge Bernthal filed his Report and Recommendation, recommending the Motion to Dismiss be denied. (#12). On March 26, 2012, this court accepted the Report and Recommendation (#16). On May 22, 2012, Judge Bernthal set dates for discovery deadlines, ordering, among other things, the exchange of initial disclosures by May 31, 2012. (Minute Entry of May 22, 2012). On June 18, 2012, Defendants filed a Motion to Compel, noting that: a Request to Produce was mailed on March 28, 2012; a follow-up letter sent on May 14, 2012; on

May 24, 2012, Defendants received email from Helen's counsel requesting to serve responses on a deferred date of May 31, 2012; no responses were received; on June 4, 2012, Defendants' counsel again sent a request for discovery responses; on June 5, 2012, Helen's counsel indicated he would provide "answers this week"; as of June 18, 2012, 18 days after the discovery deadline, no responses had been served. (#23). On July 9, 2012, Helen filed a Motion for Extension of Time (#24). On July 9, 2012, Defendants filed a Response (#25) to the Motion for Extension of Time (#24). On July 12, 2012, Helen filed a Reply (#26), which this court struck because a reply is not permitted under the local rules. (Text Order of July 12, 2012). On August 20, 2012, this court granted the Motion to Compel (#23). (Minute Entry for August 20, 2012).

On August 31, 2012, Will filed a Motion to Intervene (#30) and to Stay (#31). In the Motion to Stay, Will argues that this case should be stayed because Helen "comes before this Court with 'unclean hands' attempting to obtain a favorable ruling in Federal Court to salvage her ability to present evidence on a substantial issue, the 250 CIMCO shares, currently being properly litigated in Illinois divorce proceedings." (#32 ¶ 55). On September 18, 2012, Helen filed a Motion for Extension of Time (#36), which this court granted on October 3, 2012. On October 29, 2012, Judge Bernthal entered an order granting the Motion to Intervene for the limited purpose of allowing Will to file and pursue his Motion to Stay, thus staying the present proceedings until final judgment is entered in the dissolution of marriage case in state court; or until further order of this Court. (#39). On November 12, 2012, Helen filed an Objection (#41) to Judge Bernthal's Order (#39).[2] In the Objection, Helen argues that Judge Bernthal erred because, pursuant to Fed. R. Civ. P. 17, Will was not mentally competent, and, having no *guardian ad*

---

[2] In the Objection, Plaintiff's counsel repeatedly referred to Magistrate Judge David G. Bernthal as "the Magistrate". Reference to Judge Bernthal should be to his correct title, which is either "Judge" or "Magistrate Judge". Alternately, if counsel prefers, reference may be made to "the Report and Recommendation."

*litem*, was therefore bereft of capacity to be sued. Helen's position is that because Will was not competent to be a defendant, he could not have intervened, and accordingly, could not have filed a motion to stay before this court either appointed him a *guardian ad litem* or found him competent to be a defendant.

## Analysis

The issue before this court is whether a diversity action in a Federal district court may be stayed or dismissed pending the outcome of related state court divorce proceedings. The correct analysis is under the doctrine of *Colorado River* abstention. *See Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800 (1976). "The *Colorado River* abstention doctrine… permits federal courts to defer to a concurrent state proceeding as a matter of wise judicial administration… when parallel state court and federal court lawsuits are pending between the same parties." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497-98 (7th Cir. 2011). Because a dismissal, even *sua sponte* and without prejudice, would result in the termination of Helen's case, we apply the same standard as a motion to dismiss under Fed. R. Civ P. 12(b)(1) or 12(b)(6), and thus take all well-pled facts as true and draw all inferences in the light most favorable to the nonmoving (or, in this case, the negatively affected) party.

### I. Power to abstain *sua sponte*

A threshold question is whether a party is required to explicitly raise abstention as a defense in order for this court to entertain the doctrine.[3] Although the specific question of whether a court may abstain on its own accord under *Colorado River* appears to be a matter of

---

[3] As neither party presented or argued the relevant law in their briefs, this court rules after conducting its own research.

first impression in this Circuit, the Court of Appeals has previously held that a court may do so under *Pullman* abstention, *Waldron v. McAtee,* 723 F.2d 1348 (7th Cir. 1983), *Burford* abstention, *General Ry. Signal Co. v. Corcoran*, 921 F.2d 700 (7th Cir. 1991), and *Younger* abstention, *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996). On one hand, this court acknowledges that the issues that inform the three constitutionally-based grounds of *Pullman*, *Buford*, and *Younger* abstention—that is, comity and federalism—do not apply in the case of *Colorado River* abstention, but rather, the rubric of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Colorado River*, 424 U.S. at 817. On the other hand, the Courts of Appeal for other Circuits have permitted district courts to decline jurisdiction under *Colorado River* on a *sua sponte* basis. *See Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 n.4 (1st Cir. 2010); *Michelson v. Citicorp Nat. Services, Inc.*, 138 F.3d 508, 510 (3d Cir. 1998) (affirming district court *sua sponte* stay under *Colorado River* pending resolution of related state court action); *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 851 (5th Cir. 2009) (unpublished). In line with the three constitutional doctrines, and following the lead by the First, Third, and Fifth Circuits, this court adopts the approach that *Colorado River* abstention may be raised *sua sponte*.

## II. *Colorado River* abstention

The default rule between state and federal courts is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," due to the "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817. Thus, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. at 813. "The doctrine of abstention… is

an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it… [justified] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id*. *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.") However, that being said, *Colorado River* itself affirmed a dismissal.

*Colorado River* abstention requires a two part inquiry: first, whether the concurrent state and federal actions are "parallel"; and then, the existence of "exceptional circumstances" that warrant abstention. *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006).

*A. Parallel state proceeding*

The first inquiry is whether the state and federal actions are "parallel". To be parallel, the state case must be both contemporaneous and concurrent—that is, has begun and has not yet terminated—*Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988), *cf.*, *Strasen v. Strasen*, 897 F. Supp. 1179, 1186 (E.D. Wis. 1995), as well as involve substantially the same issues, thus making it likely that a judgment in one suit will have a *res judicata* effect in the other suit, *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1230 n.1 (7th Cir. 1979). Another way to determine if the suits are parallel is if there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004).

This court has confirmed with the Piatt County Clerk's Office that the state case was filed on October 6, 2006, and has not yet terminated, with the last docket entry on February 28, 2013 setting a hearing on March 28, 2013. Neither party has suggested that the possibility of a

settlement is being entertained. Helen filed her complaint in this case on August 31, 2011, and obviously it has not yet terminated. Thus, the state case is contemporaneous and concurrent with the present one.

In regard to the second element, the two cases superficially do not appear to overlap. One involves divorce; the other, a board of directors that has allegedly played fast and loose with a corporate shareholder record book. On closer examination, the property at dispute in this case is 250 shares of CIMCO stock—shares that not only are alleged to have been improperly re-assigned in that record book, but had earlier been allegedly transferred between spouses during the pendency of the marriage. Helen testified that the 250 shares of CIMCO "were assigned and given to me in August of 2006, during the marriage, by my husband, William Ayers, prior to his stroke in May of 2007." (#41 exh. 1 ¶ 1). Under Illinois law, property acquired before the marriage constitutes "non-marital property", 750 ILCS 5/503(a)(6), which, upon dissolution of the marriage, is to be assigned to the spouse that brought it to the marriage, § 5/503(d). Non-marital property may be transmuted into marital property when title is placed in joint tenancy with the spouse, under the presumption that a gift was made to the marital estate. *In re Marriage of Olson*, 451 N.E.2d 825, 828 (Ill. 1983). And last, interspousal gifts are recognized under 750 ILCS 5/503(a)(1), wherein a donor spouse makes a gift of his interest in marital property to the other spouse, at which point the donee spouse is in possession of his or her own interest as well as the interest of the donor spouse, converting the marital property of both spouses into the nonmarital property of the donee.  *In re Marriage of Lee*, 615 N.E.2d 1314, 1323 (Ill. Ct. App. 5th Dist. 1993). Regardless of the final judicial disposition of the shares, it is clear that Helen alleges that the shares were transferred during the pendency of the marriage and she does not allege that there was a clear and absolute separation of financial accounts, *cf. In re*

*Marriage of Guerra*, 505 N.E.2d 748, 750 (Ill. Ct. App. 2d Dist. 1987). This court therefore finds that the alleged transfer was in the context of the marital estate.

Because the dispute is over property allegedly transferred between two spouses, into, or out of, the marital estate, during the pendency of the marriage, and no evidence has been presented otherwise, the Illinois state court has jurisdiction to dispose of those shares during the dissolution proceedings. Further, Will notes that he contests Helen's claim to ownership of those shares and is doing so in state court. Helen therefore has the opportunity to dispute her corporate fraud claim in state court. More fundamentally, she will be *required* to litigate whether she even has legal ownership of those shares. Thus, even if the § 5/12.56 *claim* itself is not raised and litigated to full and final judgment, the *issue* of whether Helen was a legal shareholder will be subject to issue preclusion. Accordingly, this court concludes that despite a different legal basis for the claim, the core issue of whether the alleged interspousal transfer had occurred properly affords a finding that the dissolution proceeding and the present case are "parallel".

  *B.* Colorado River *factors*

There are ten factors that this court must consider in determining whether to defer to the concurrent jurisdiction of the state court: (1) whether a court assumed jurisdiction over the property at issue, and if so, which was first; (2) the inconvenience of a federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law: state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of

removal; and (10) the vexatious or contrived nature of the federal claim. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288-89 (7th Cir. 1988), compiling factors from *Colorado River*, 424 U.S. at 818, and *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23-26 (1983).

The state court acquired jurisdiction over the matter and the property in 2006, well in advance of the case being filed in this court, so factors (1) and (4) weigh in favor of abstention.

The Piatt County courthouse is 27 miles from this courthouse, and both are relatively equidistant from Helen's attorney, whose offices are located in Chicago, so factor (2) does not weigh against abstention. (Will and CIMCO's attorneys are local.)

Regarding factor (3), the avoidance of piecemeal or overlapping litigation, the property at dispute in this case is an essential and integral component of the divorce proceedings, and any judgment entered in this court would create a *res judicata* effect on one element of a larger state case. Further, the original impetus for Judge Bernthal's stay was Helen's Request for an Evidentiary Hearing on the Capacity and Competency, under Fed. R. Civ. P. 17 (#37). The Report and Recommendation stated, as follows:

> The Court in the Piatt County marital case has previously ordered a mental health examination. An examiner has been appointed and commenced the process of conducting the necessary evaluation. The results have not yet been made available.
>
> There is no need for this Court to duplicate the process that has already commenced. The state court is a preferred forum for determining competency. The state courts perform this task on a regular basis. It is very rare for the federal court to be asked to make such a determination.

(#39 p. 2). A stay in this case to await the evaluation conducted in the state court—or, as here, a dismissal so as to not duplicate the efforts of two judicial systems regarding the disposition of

the same property—promotes judicial economy and reduces piecemeal litigation. Thus, factor (3) weighs in favor of abstention.

Regarding the source of governing law, the only law in this case is Illinois state law, so factor (5) weighs in favor of abstention. *Cf. Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988) ("In one class of cases, those where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the *Colorado River* stay is not appropriate.")

As for factor (6), there is no reason to suspect that the state court could not adequately adjudicate the dissolution process. Helen did file a motion to substitute the judge in her dissolution proceedings, but the motion was denied, suggesting that any allegation that her proceedings were unfair was spurious. Further, Helen could very well have filed her state law claim in state court. She has not suggested why the state court—whether the judge in the dissolution proceeding, or the state judiciary in general, should she choose to re-file her § 5/12.56 action in state court—would not adequately protect her rights. Before she can bring an 805 ILCS 5/12.56 claim she must establish that the shares were properly transferred to her, § 5/12.56(a) ("In an action *by a shareholder*…") (emphasis added). Then she must establish that the directors had or will act in a manner that is illegal, oppressive, or fraudulent, § 5/12.56(a)(3), and then, within 90 days of filing that "petition", she must then file an election for the corporation to buy out her shares, § 5/12.56(f). *See also Hamlin v. Harbaugh Enterprises, Inc.*, 755 N.E.2d 993, 996 (Ill. App. Ct. 3d Dist. 2001) (noting the 90-day clock begins to run from the date of filing the complaint). The statute does not list a statute of limitations restricting when a shareholder may file that type of suit, suggesting that a shareholder always has this right as long as he or she remains a shareholder. This interpretation is supported by § 12.80, which requires that a shareholder's civil remedies survive for five years after the corporation is dissolved. It

appears that Helen may file her independent claim in state court as long as she remains a "shareholder". And whether she is a shareholder depends on whether she is the legal owner of those shares, which itself depends on whether they were properly transferred to her during the pendency of the marriage. Factor (6) therefore weighs in favor of abstention.

Regarding factor (7), Helen has survived a motion to dismiss in this court, but she has not made substantive progress in a timely fashion, largely due to her counsel's intransigent attitude toward court-mandated deadlines. The state court case has also been sandbagged by the antics of either Helen or her attorney with delays and frivolous motions, among other kinds of dubious behaviors, to the point that that court entered default against her as a result of her failure to appear at hearings. However, at least that court did award a Judgment of Dissolution of Marriage, and has undoubtedly more time and knowledge of the facts of the case than this court. Factor (7) therefore also weighs in favor of abstention.

Factors (8) and (9) are neutral, as concurrent jurisdiction is appropriate and because the case is here on diversity jurisdiction and a re-filed state case may be removed to Federal court, if necessary or desired.

As to the last factor, which is the vexatious or contrived nature of the Federal claim, this court can only conclude from the filings and the limited evidence before it that Helen is attempting to circumvent the state court proceedings by filing in Federal court. But for the 250 CIMCO shares—shares that may or may not have been given from a husband to a wife during a very short marriage—Helen would not be in this court. That, along with the fact that the only cause of action is pursuant to a state statute suggests that this court, as a Federal court of limited jurisdiction, is not the proper forum in which to address her grievances. *Colorado River* abstention is therefore appropriate.

### III. Domestic relations exception to federal jurisdiction

Although no party argued that the domestic-relations exception applies, a brief mention of the underlying rationale is persuasive. This exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees."*Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Although Helen does not request any of those kinds of relief *per se*, the Seventh Circuit has discussed the two main reasons behind the doctrine. That court wrote:

> The best contemporary reasons for keeping federal courts out of the business of probating wills, resolving will contests, granting divorces and annulments, administering decedents' estates, approving child adoptions, and the like are… First, the proceedings we have listed, or at least those involving child custody and probate administration, are *in rem* in character-they are fights over a thing of value that is in the court's control-and another court should not try to elbow its way into the fight. Second, state courts are assumed to have developed a proficiency in these matters, to have procedures tailored to them, and to work closely with and even employ specialized staff not found in federal courts.

*Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006). The *Jones* reasoning applies here. The shares are a thing of value in the state court's control, and this court "should not try to elbow its way into the fight." Second, as Judge Bernthal noted in his Report and Recommendation, this court has less proficiency and fewer procedures tailored around disputes of mental health than the state courts. Even if Helen's assertions are taken baldly, and the only issue is over the allegedly fraudulent behavior regarding those shares, we must presume that the state courts are more fluent with disposition of interspousal gifts of non-marital property. These reasons further support the decision to dismiss the case.

### IV. Dismissal vs. stay

The final issue is whether the case should be dismissed or only stayed. Although a district court is permitted to stay or dismiss when it abstains under *Colorado River*, *AXA*

*Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 276 (7th Cir. 2003), the preference is to stay rather than dismiss, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, n.2 (1995). ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course."); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 503 n.9 (7th Cir. 2011) ("When abstention is appropriate under *Colorado River,* our circuit has a strong preference for a stay rather than a dismissal of the federal suit."). This preference is to prevent any potential prejudice to the federal plaintiff due to the passage of time. *Wilton*, 515 U.S. at 288, n.2 (noting that a stay is preferred "because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."); *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 698 (7th Cir. 1985) ("A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits.").

In his original Order, Judge Bernthal stayed the case, correctly following the mandated preference. However, this court is persuaded that the Report and Recommendation did not go far enough. First, the *Colorado River* factors, as discussed above, suggest that the issue of the ownership of the shares should be adjudicated in state court and that this court should defer to that one in the interests of judicial economy and wise judicial administration, as well as comity. Second, it is highly unlikely that the dissolution proceedings will neither fully address nor properly adjudicate the disposition of the shares in question. Given that Helen may pursue her § 12.56(a) claim as long as she is a "shareholder", there are no timeliness limitations on her filing an independent action in state court, much less pursuing the disposition of those shares in the dissolution proceedings. Last, because Helen is before this court on diversity jurisdiction, this

court must apply the state law statute of limitations. *Doe v. Roe No. 1*, 52 F.3d 151, 154 (7th Cir. 1995) ("A state law which bars actions because of a statute of limitations is sufficiently substantive under *Erie* that a federal court exercising diversity jurisdiction must respect it."). As discussed above, it does not appear that § 5/12.56 has a statute of limitations. Therefore, in addition to being able to re-file in state court, she may also re-file in this court both during or after final judgment is entered in the dissolution proceedings.

In *Lumen Const., Inc. v. Brant Const. Co., Inc.*, a plaintiff filed a variety of claims under state statutory and common law theories in state court, and also filed claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 2000d. 780 F.2d 691, 693 (7th Cir. 1985). The district court there dismissed on the ground that because "the plaintiffs' civil rights claims arose out of a contractual dispute… it would be impossible to decide the federal claims without some resolution of the state law issues." *Id.* at 693. On appeal, the Seventh Circuit affirmed, but modified the dismissal to a stay, reasoning solely that a stay "permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end" and allows the case to return to "the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions." *Id*. at 698. *Lumen* is distinguishable on the grounds that the plaintiff there brought exclusive federal claims, whereas here, the plaintiff only has a single state claim. There is no federal claim that must be retained "if the state court action does not meet its anticipated end". *See also DeMauro v. DeMauro*, 115 F.3d 94, 100 (1st Cir. 1997) (requiring a stay instead of a dismissal when the Federal claim was under RICO).

Given the reasons as discussed above, including the state court's exclusive jurisdiction over domestic relations, the state court's advanced progress, and the high probability that a state court judgment would have a preclusive effect on subsequent litigation, this court finds, after

careful consideration and the exercise of wise judicial administration, that it is required to abstain under the *Colorado River* doctrine. Further, the absence of an exclusive federal claim and Helen's vexatious efforts to litigate a matter in Federal court previously forfeited in state court overcome the preference to stay in favor of dismissal.

IT IS THEREFORE ORDERED THAT:

(1) The Order to Stay and permitting William Ayers to Intervene (#39) is VACATED.

(2) The case is DISMISSED without prejudice and terminated.

ENTERED this 27th day of March, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE